# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
## 2:09cv44

| | |
|---|---|
| CADENCE BANK, N. A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| HORRY PROPERTIES, LLC, a South ) | |
| Carolina Limited Liability Company; ) | |
| ARTHUR F. McLEAN, JR.; and ) | |
| ELIZABETH A. McLEAN, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the court on defendants Arthur F. McLean, Jr.'s and Elizabeth A. McLean's (hereinafter "the McLean defendants") Motion to Transfer Venue.[1] The court has also received plaintiff's response and defendants' reply. Having considered defendants' motion and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

**I.  Background**

**A.  Nature of the Action**

Plaintiff brings this action under the court's diversity jurisdiction 28, United States Code, Section 1332. In accordance with Section 1348, plaintiff, a national banking association, is a citizen of Mississippi, the state in which it is located.

---

[1] Default and Default Judgment have been entered against defendant Horry Properties, LLC.

-1-

Complaint, at ¶ 1. The McLean defendants are alleged to be "citizens" of the State of North Carolina. Compl., at ¶¶ 3-4.  Plaintiff alleges that the amount in controversy exceeds the statutory minimum, amounting to $367,516.21 in controversy, exclusive of interest and costs.  Compl., at ¶ ¶ 5 & 14.

Review of the factual allegations of the Complaint reveals that the defaulted defendant, Horry Properties, LLC, delivered a promissory note to plaintiff in 2005 in the face amount of $816,355.00 by and through its member-manager, defendant Arthur F. McLean.  Compl., at ¶ 7.  A default judgment has been entered by the district court in this matter against Horry Properties, LLC.

When Horry Properties, LLC, delivered the promissory note underlying this deficiency action, the McLean defendants executed and delivered to plaintiff a personal guaranty for the debt owed by Horry Properties, LLC, as represented by the promissory note.  Compl., at ¶ 9.  In the Second Cause of Action, plaintiff seeks to reduce the McLean defendants' personal guaranty to a judgment for the deficiency.

B.  **Factual Setting**

The court has carefully considered the Complaint, the briefs, and the evidentiary material submitted by all parties. A fair review of all of the pleadings reveals that the proceeds of the loan underlying this action were used to purchase a restaurant in Hayesville, North Carolina, by Horry Properties, LLC.  In turn, it appears that Horry Properties, LLC, has as a managing member defendant Arthur F. McLean, Jr. See A. F. Mclean Aff. (#22-1), at ¶ 6.  When Horry Properties. LLC, sought to do business in North Carolina, Mr. McLean provided his name to the North

Carolina Secretary of State as the "name of the registered agent in the State of North Carolina . . . ."Plaintiff's Ex. 2 (#28-1), at p. 3.

It also appears that defendant Elizabeth A. McLean played an active role developing the North Carolina restaurant. Plaintiff contends in its response that Elizabeth A. McLean is a managing member of The Country Cottage of Hayesville, LLC, which purportedly operated the Hayesville restaurant.[2] The court has reviewed and takes judicial notice of the public records maintained by the Secretary of State of North Carolina, and it appears that defendant Arthur F. McLean, Jr., and "Beth McLean" (who, it is reasonable to conclude, is Elizabeth A. McLean) were listed as the initial managers of The Country Cottage of Hayesville, LLC, in the Articles of Organization.[3] During the pendency of this action, such entity has been dissolved by the North Carolina Secretary of State for failure to file an annual report. The face of the Promissory Note given in this matter reveals that Horry Properties, LLC, was doing business as "Country Cottage of Hayesville, LLC." Complaint (#1), Ex. A, at p. 7.

Financing was secured through Seasons Bank in Blairsville, Georgia, which is plaintiff's predecessor in interest on the loan and guaranty. Such restaurant venture apparently failed, Horry Properties, LLC, defaulted on the loan, and plaintiff and

---

[2] The court notes that plaintiff has failed to provide a citation for such factual allegation in its response, a violation of L.Cv.R. 7.1(C). Review of the evidentiary material submitted by plaintiff in support of its response fails to disclose any evidence supporting such factual contention.

[3] See http://www.secretary.state.nc.us/corporations/Filings.aspx?PItemId=6510522

foreclosed under North Carolina law on the collateral securing the note, Compl., at ¶ 11, leaving a substantial deficiency which is the subject of this action.

The McLean defendants contend that this action should be transferred to the United States Court for the District of South Carolina inasmuch as they are domiciled in South Carolina, they lack minimum contacts with North Carolina, and such would be a more convenient forum for the parties.

## II. The McLean Defendants' Motion

In their Answer, the McLean defendants specifically asserted, among other defenses, motions to dismiss under Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure. Answer (#14). Motions contained in answers, but not briefed, act as placeholders under the Local Civil Rules, until such time as some or all of those motions are reasserted and briefed.

The Motion to Transfer Venue (#22) makes it clear that the McLean defendants seek transfer under 28, United States Code, Section 1406(a) (where venue is improperly laid) and, in the alternative, under Section 1404(a) (where venue is properly laid in this district). While the McLean defendants discuss at length in their brief a lack of personal jurisdiction, they do not raise, mention, or request dismissal of this action under Rule 12(b)(2) for lack of personal jurisdiction. The court will, therefore, consider the Motion to Transfer under both Sections 1404 and 1406.[4]

---

[4] Such distinction is important to the court under 28 U.S.C. § 636 inasmuch as the district judge to whom this case is assigned, as well as other judges in the district, have determined that motions that only seek transfer of an action to another judicial district, and do not seek dismissal of the action, are non-dispositive motions subject to disposition under Section 636(b).

-4-

**III. Motion to Transfer Under Section 1406(a)**

Where it has been shown that venue is mislaid in a district, the court may transfer venue to a court where it could have been brought. 28 U.S.C. § 1406(a).

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). When considering a motion seeking transfer based on improper venue, a court must accept the facts alleged in the Complaint as true and must draw all reasonable inferences in the plaintiff's favor. Micromuse, Inc. v. Aprisma Management Technologies, Inc., 2005 WL 1241924, *2 (S.D.N.Y. 2005).[5]

Essentially, the McLean defendants are arguing that personal jurisdiction over them is so lacking as to warrant transfer of this action to the District of South Carolina. When personal jurisdiction is determined on the basis of briefs and the allegations in the Complaint without an evidentiary hearing, "the plaintiff bears the burden of making a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Consulting Engineers, Inc. v. Geometric Limited, 561 F.3d 273, 278 (4th Cir. 2009) (citation omitted).

In considering the McLean defendants' Motion to Transfer, analysis begins with the two-step approach furnished by the Court of Appeals for the Fourth Circuit in English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990). First, the court must

---

[5] Due to limits of electronic case filing, a copy of such unpublished opinion is incorporated into the electronic record through reference to the Westlaw citation.

consider whether the forum state's long-arm statute authorizes personal jurisdiction. Consulting Engineers, 561 F.3d at 278. Second, if personal jurisdiction is authorized, the court next considers whether there are sufficient contacts with the forum state to meet the requirements of the Due Process Clause of the fourteenth amendment. Id.

There are two categories into which personal jurisdiction falls: "general" or "specific." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 411 (1984). General personal jurisdiction will exist when a defendant has "continuous and systematic" contacts with the forum state. Id., at 411 fn. 9. If, however, general jurisdiction is lacking, plaintiff may then attempt to establish "specific" jurisdiction by showing that the claims asserted arose from or are related to defendants' alleged actions within the state. Id., at fn. 8.

A district court may exercise specific personal jurisdiction over a defendant only if the defendant has sufficient "minimum contacts" with the forum state. International Shoe v. Washington, 326 U.S. 310, 316 (1945). Where there is more than one defendant, as here, plaintiff has the burden of establishing each defendant's contacts with the forum state; the court must then, in turn, assess such contacts individually. Calder v. Jones, 465 U.S. 783, 790 (1984). It is well-settled that a defendant must have contact with the forum state in order to be subject to the personal jurisdiction of that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

In this case, a fair reading of the Complaint as well as the evidentiary material submitted outside the initial pleadings, as well as documents in the public record, reveals that the McLean defendants have had substantial, systematic contacts with

North Carolina. Indeed, defendant Elizabeth A. McLean, while contending she is a domiciliary of South Carolina, avers that she is still registered to vote in North Carolina and holds a North Carolina drivers license even though she states she has returned to North Myrtle Beach. <u>See</u> Elizabeth A. McLean Affidavit. Likewise, Mr. McLean contends that he is a domiciliary of South Carolina, but contends that his home in Hayesville is held in trust for his children.

Review of the pleadings makes it clear that both general and specific jurisdiction exists over these defendants. While they may indeed be domiciliaries of the State of South Carolina, where they are domiciled is of little importance to what contacts they have with this forum. While they have certainly taken steps to lawfully shield themselves, they have continuous and systematic contacts with North Carolina as well as sufficient activities within the forum related to this action so as to satisfy the requirements of due process. Clearly, the McLean defendants, while ostensibly operating through LLCs, represented themselves to be the managing members of the North Carolina LLC that operated the restaurant in Hayesville. While little is disclosed by any party as to who was in charge of the daily operations of the restaurant, a reasonable inference form these pleadings is that the managing members of the LLC that owned and operated the restaurant actually had a hand in the day-to-day operations. While the McLean defendants argue that this action is only about the guaranty, the guaranty appears to be contextual to the loan it backed and the business that such loan funded. It simply is not credible for the McLeans, who were the driving force behind the restaurant, the loan, and the guaranty to argue that they lack contacts

with North Carolina. Indeed, Mr. McLean represented to the he Secretary of State of North Carolina that he was the "registered agent *in the State of North Carolina*" for the foreign LLC. Such analysis coincides with the analysis approved in Burger King, supra, wherein the Court held in relevant part, as follows:

> . . . we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.*, at 316-317, 63 S.Ct., at 604-605. It is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

Id., at 479. Clearly, among the future consequences of a guaranty of a loan backing a restaurant in North Carolina, secured by real property in North Carolina, based on a guaranty that was likely entered into by defendants in North Carolina, is the possibility that the creditor holding the guaranty will seek to enforce it in North Carolina. The McLean defendants argue that even if the guarantee agreement was entered into in North Carolina, "an isolated transaction is generally insufficient for the long-arm statute to establish personal jurisdiction." Brief in Support (#23), at p. 7 (citing Harrelson Rubber Co. v. Layne, 69 N.C. App. 577 (1984)). This was not, however, an "isolated transaction," but appears to have been an additional and necessary step for the LLCs through which the McLean defendants were operating to secure financing for a restaurant in North Carolina. Nor was such guaranty likely a marginal or perfunctory event; according to the affidavit of Mr. Hall, the bank in reviewing the loan for the restaurant considered Mr. McLean's personal assets,

including his home in Hayesville, making it reasonable to conclude that the guaranty was critical to the restaurant securing financing .The North Carolina Long Arm Statute authorizes the exercise of personal jurisdiction in twelve circumstances. N.C. Gen. Stat. § 1-75.4(1) - (12). Section 1-75.4(7) provides the provision most relevant to these circumstances:

> 7) Deficiency Judgment on Local Foreclosure or Resale. – In any action to recover a deficiency judgment upon an obligation secured by a mortgage, deed of trust, conditional sale, or other security instrument executed by the defendant or his predecessor to whose obligation the defendant has succeeded and the deficiency is claimed either:
> 
> a. In an action in this State to foreclose such security instrument upon real property, tangible personal property, or an intangible represented by an indispensable instrument, situated in this State; or
>
> b. Following sale of real or tangible personal property or an intangible represented by an indispensable instrument in this State under a power of sale contained in any security instrument.

N.C.Gen.Stat. § 1-75.4(7).

Inasmuch as the North Carolina Supreme Court has held that such jurisdictional statute applies to a defendant who meets the minimal contacts requirement of International Shoe Co. v. Washington, supra, the two-pronged approach approved by the circuit in English & Smith, supra, "collapses into the question of whether (the Defendants have) the minimum contacts with North Carolina." Fieldcrest Mills, Inc. v. Mohasco Corp., 442 F. Supp. 424, 426 (M.D.N.C. 1977). The statutory and constitutional inquiries merge. Hiwassee Stables, Inc. v. Cunningham, 135 N.C.App. 24, 27 (1999). Even though the inquiries merge, if jurisdiction is authorized under the North Carolina Long Arm Statute, the court need not engage in additional due process

-9-

analysis. Clearly, the McLean defendants have sufficient minimum contacts with North Carolina, making relief under Section 1406(a) unavailable inasmuch as jurisdiction is properly laid in this district.

IV. **Section 1404(a) Transfer**

Where plaintiff has, as here, properly invoked the courts jurisdiction, discretionary transfer is still available under 28, United States Code, Section 1404(a), which provides, as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C § 1404(a)

In <u>Jim Crockett Promotions, Inc. v. Action Media Group, Inc.</u>, 751 F. Supp. 93 (W.D.N.C. 1990), this court established a litany of considerations applicable to any motion to transfer made under 28, United States Code, Section 1404(a). In order to determine whether the proposed transfer is proper, a balance must be struck between the competing interests. Unless the balance is tipped strongly in favor of the moving party, <u>Collins v. Straight, Inc.</u>, 748 F.2d 916, 921 (4th Cir. 1984), plaintiff's choice of forum should not be disturbed. Upon a motion to transfer, the moving party carries the burden, 1A Moore's Federal Practice, paragraph 0.345[5] at 4360 (Matthew Bender 1990); and the burden is heavy, <u>Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.</u>, 719 F. Supp. 446, 451 (W.D.N.C. 1989).

> A defendant carries a particularly heavy burden when it moves pursuant to [Section] 1404(a) to transfer an action from a district where venue is proper. As this court has noted previously, it is "black letter law," that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed."

Phillips v. S. Gumpert Co., Inc., 627 F. Supp. 725, 726-27 (W.D.N.C. 1986) (citations omitted) (quoting Western Steer Mom 'N' Pop's v. FMT Invs., Inc., supra, at 265).

As provided in Jim Crockett Promotions, Inc., supra, the considerations relevant to discretionary transfer of venue are, as follows:

1. The plaintiff's initial choice of forum;

2. The residence of the parties;

3. The relative ease of access of proof;

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5. The possibility of a view;

6. The enforceability of a judgment, if obtained;

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

11. The avoidance of unnecessary problems with conflict of laws.

Id., at 7-8. Courts should make both a quantitative and a qualitative analysis of the factors. McDevitt & Street Co. v. Fidelity and Deposit Co., 737 F. Supp. 351, 354 (W.D.N.C. 1990).

    **a.    The plaintiff's initial choice of forum.**

In this case, plaintiff clearly desires to litigate this matter in the Western District of North Carolina. The court assigns this choice great weight.

  **b.**  **The residence of the parties.**

In accordance with Section 1348, plaintiff resides in Mississippi. The McLean defendants contend that they are domiciliaries of South Carolina. While this factor initially weighs in favor of transfer, the weight is diminished by Mrs. McLean's maintenance of voter registration and a driver's license in North Carolina. Also diminishing this factor is Mr. McLean's ownership interest in a residence in Hayesville, which he contends is held in trust for his children.

  **c.**  **The relative ease of access of proof**.

This factor is unaffected by the choice of forum provision. Plaintiff's action is, essentially, for breach of a contract of guaranty, and the papers evidencing such guaranty, the underlying foreclosure, the default, and the loan are all easily transmitted. While the McLean defendants contend that they have at least one witness in South Carolina (apparently a registered agent of the defaulted Horry Properties, LLC, it appears from the answer that the defenses will revolve around notice and the activities of foreclosure, most of which occurred in North Carolina. This factor favors retention.

  **d.**  **The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses.**

The key witnesses, if this matter were to go to trial would be the McLean defendants, bank personnel, and members of the LLCs. In their reply, the McLean

defendants argue that "others with specific knowledge of the loan and deed of trust are not residents of North Carolina." Reply, (#29) at p. 5. Who these witnesses are, how their testimony would be relevant, and where they reside have not been disclosed to the court by the moving defendants. Based on the Answer, the court assumes that the defense at trial will center around the notice of default and demand provided to Horry Properties, LLC, as well as the McLean defendants, as well as any alleged deficiencies in the foreclosure proceedings. While there may certainly be other witnesses in South Carolina, it appears that Mr. McLean was the registered agent in North Carolina for service of process for Horry Properties, LLC.[6] Thus, there has been no showing that compulsory process will be unavailable, and the court is satisfied that the parties have the ability to notice and take the depositions of any unwilling South Carolina residents.

Turning next to the costs, the costs of obtaining willing witnesses will be unaffected by venue. Clearly, the costs deposing and then having willing witnesses appear in either Asheville or Florence will be substantial; however, the court finds that no substantial savings will be realized by having the matter transferred to Florence. Regardless of where this action is tried, there will be substantial costs to both sides for travel to and from North Carolina. Inasmuch as plaintiff has the burden of proof, it will likely have the bulk of witnesses, especially if a defense is mustered on notice, demand, and irregularity in foreclosure. Plaintiff will incur the bulk of travel costs.

This factor is, at best for defendants, neutral.

---

[6] http://www.secretary.state.nc.us/corporations/Corp.aspx?PitemId=6536177

**e.      The possibility of a view.**

Although the bricks and mortar restaurant is located in Hayesville, this factor is neutral in that there is nothing both relevant and tangible to view other than documents.

**f.      The enforceability of a judgment, if obtained.**

While the McLean defendants contend that their assets are all in South Carolina, this factor is also neutral inasmuch as a judgment obtained in a federal court in North Carolina is easily enforceable nationwide.

**g.      The relative advantages and obstacles to a fair trial.**

This factor is neutral in that a fair trial can be obtained in any federal court for either side.

**h.      Other practical problems that make a trial easy, expeditious, and inexpensive.**

There appear to be no other practical problems outside of the factors previously considered that make trial any easier here than in South Carolina. This factor is neutral.

**i.      The administrative difficulties of court congestion.**

There appears to be no significant difference in court congestion. Indeed, the Asheville Division is currently running without a backlog. The court is without data presented by the parties as to court congestion in Florence; however, from experience, the court assumes that most districts operate with backlogs as criminal cases must be addressed first under the Speedy Trial Act. Assuming statistical data was presented to such effect, this factor would likely weigh in favor of retention, but the court will

consider this factor to be neutral.

        **j.    The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action**.

There is a clause concerning choice of laws in the guaranty. The guaranty provides that it "shall be governed by the laws of the State in which it is executed." Comp., Ex. C, at ¶ 13. While the document mentions "Blairsville, Georgia" in the heading, the defendants appear to concede that the document was executed in North Carolina and that North Carolina law will apply. Although the court agrees that a federal court in South Carolina could apply North Carolina law, this factor weighs in favor of retention as North Carolina has a greater interest in resolution of a dispute involving a business that was operated in North Carolina as well as resolution of the ensuing indebtedness and is at home with the law that likely governs enforcement of the guaranty. This factor favors retention.

        **k.    The avoidance of unnecessary problems with conflict of laws.**

There appear to be no conflicts of law, making this factor favor retention.

* * *

Having considered all of the factors individually, the undersigned will now consider all the factors cumulatively. Quantitatively, the factors weigh in favor of retention. Qualitatively, a similar result is reached as plaintiff's initial choice of forum must be given great weight. It would be difficult to argue that the McLean defendants were unaware of the risk, or would be surprised to discover, that executing a guaranty in North Carolina for a business operating in North Carolina would

expose them to the risk of litigation in this forum.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendants Arthur F. McLean, Jr.'s and Elizabeth A. McLean's Motion to Transfer Venue (#22) is **DENIED.**

Signed: October 13, 2010

Dennis L. Howell
United States Magistrate Judge